# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| ROVI GUIDES, INC., ROVI TECHNOLOGIES CORP., VEVEO, INC., | § § § | |
| *Plaintiffs*, | § § | Case No. 2:16-CV-00321-RSP |
| v. | § § | |
| COMCAST CORPORATION, et al., | § § § | |
| *Defendants*. | § § | |

| | | |
|---|---|---|
| ROVI GUIDES, INC., | § § | |
| *Plaintiff*, | § § § | Case No. 2:16-CV-00322-JRG-RSP |
| v. | § § | |
| COMCAST CORPORATION, et al. | § § § | |
| *Defendants*. | § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Comcast Defendants'[1] Motions to Change Venue under 28 U.S.C. § 1404(a) to the Southern District of New York pursuant to forum-selection clauses in contracts between Comcast and Rovi (Case No. 2:16-cv-00321-RSP, Dkt. 78; Case No. 2:16-cv-00322-JRG-RSP, Dkt. 67).

Comcast STB filed unopposed Motions to Intervene pursuant to Fed. R. Civ. P. 24(b)(1)(b) for the limited purpose of joining the Comcast Defendants' Venue Motions (Case

---

[1] The Comcast Defendants are Comcast Corporation, Comcast Cable Communications, LLC, Comcast Cable Communications Management, LLC, Comcast of Houston, LLC, Comcast Business Communications, LLC, Comcast Holdings Corporation and Comcast Shared Services, LLC (together, "Comcast").

1

No. 2:16-cv-00321-JRG-RSP, Dkt. 80; Case No. 2:16-00322, Dkt. 69). Comcast STB is a signatory to the contracts that include the relevant forum-selection clauses, and thus permissive intervention under Fed. R. P. 24(b)(1)(B) is warranted. Comcast STB's Motions to Intervene are therefore **GRANTED**.

Also before the Court are ARRIS Defendants'[2] Motions to Change Venue under § 1404(a) to the Southern District of New York pursuant to forum-selection clauses in contracts between ARRIS and Rovi (Case No. 2:16-cv-00321, Dkt. 88; Case No. 2:16-cv-00322, Dkt. 77).

For the following reasons, Comcast's and ARRIS's Motions to Change Venue are **GRANTED**.

## I. BACKGROUND

In 2004, Rovi and Comcast executed a series of agreements creating a joint venture to develop interactive programing guides. As part of the joint venture, Rovi granted Comcast a perpetual cross-license to use relevant Rovi software (the "Software Agreement"). Rovi also licensed Comcast relevant patent rights (the "Patent Agreement"). The Patent Agreement extended for twelve years before expiring on March 31, 2016. Case No. 2:16-cv-00321, Dkt. 78-7.

Both Agreements include forum-selection clauses. The Software Agreement provides that any "suit, action or proceeding . . . based on any matter arising out of or in connection with" the agreement or "the transactions contemplated hereby shall be brought" in New York. *Id.*, Dkt. 78-9 § 12.09. The Patent Agreement specifies that New York shall be the "exclusive jurisdiction" for "any dispute arising from" the agreement." *Id.*, Dkt. 78-10 § 23.

---

[2] ARRIS Defendants are International plc, ARRIS Group, Inc., ARRIS Technology, Inc., ARRIS Enterprises LLC, ARRIS Solutions, Inc., Pace Ltd. (now known as "ARRIS Global Ltd."), Pace Americas Holdings, Inc., Pace Americas Investments, LLC, and Pace Americas, LLC.

Before the Comcast Patent Agreement expired on March 31, 2016, the parties attempted to renew the Patent Agreement, but negotiations failed. *Id.*, Dkt. 2. On April 1, 2016, Rovi filed the -321 action against Comcast and other Defendants for infringement of various patents, contending that the infringing activity is occurring "without authority or license." *Id.* Rovi also instituted an action in this Court against the same Defendants alleging infringement of additional patents (the -322 action). Rovi thereafter instituted a proceeding at the International Trade Commission ("ITC") against the Defendants on April 6, 2016, asserting the same patents asserted in the -322 action. *See In the Matter of Certain Digital Video Receivers and Hardware and Software Components Thereof*, Inv. No. 337-TA-1001 (ITC Apr. 6, 2016).

On May 24, 2016 Comcast filed a suit against Rovi in the Southern District of New York, alleging that Rovi's institution of the patent infringement and ITC enforcement actions constituted breach of the License and Patent Agreements. *See Comcast v. Rovi*, No. 16-cv-3852, Dkt. 1 (S.D.N.Y. May 23, 2016). Accordingly, Comcast seeks to transfer Rovi's patent infringement actions pending in this Court to New York pursuant to the forum-selection clauses in the License and Patent Agreements.

In 2014, Defendant ARRIS Group, Inc. entered into an Interactive Program Guide Patent License Agreement (the "ARRIS Agreement") with Plaintiff Rovi Guides, Inc., and its subsidiaries. Case No. 2:16-cv-00321, Dkt. 88-3. The Agreement specified that New York law would govern and that "[v]enue for any proceedings arising out of or related to this Agreement shall be in a court within the State of New York and the City of New York." *Id.* ¶ 9.4. The parties "unequivocally waive[d] any and all defenses and/or rights to challenge the jurisdiction or venue of such courts." *Id.* Rovi granted ARRIS a license under Rovi's relevant patents to make and sell interactive programming guides. *Id.* ¶ 2.1.

The Agreement also provided ARRIS the right to sublicense service providers that deployed the interactive programming guides. *Id.* ¶ 2.1.1. ARRIS was not permitted, however, to license Comcast because Comcast, as well as several other large cable companies, had separate license agreements with Rovi. *Id.* ¶ 4.9. Because of the complex licensing relationship between Rovi, ARRIS, and Comcast, the Agreement specified that Rovi would itself negotiate with larger service providers such as Comcast and would not "involve Licensee [ARRIS] in any such discussions or subsequent enforcement actions . . . so long as Licensee does not seek to indemnify such [providers] against a claim by Rovi." *Id.* ¶ 2.2. ARRIS argues that these actions should be transferred to New York pursuant to the forum selection clause in the ARRIS Agreement.

## II. DISCUSSION

Section 1404(a) allows the Court to transfer "any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." This section "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. Of Texas*, 134 S. Ct. 568, 579 (2013). "[A] proper application of § 1404(a) requires that a forum selection clause be 'given controlling weight in all but the most exceptional cases.'" *Id.* (citation omitted). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id.; see Indus. Print Techs. LLC v. Canon U.S.A., Inc.*, No. 2:14-CV-00019, 2014 WL 7240050, at *1-*6 (E.D. Tex. Dec. 19, 2014) (finding forum-selection clause required transfer).

"The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis." *Atl. Marine*, 134 S. Ct. at 581. "First, the plaintiff's choice of forum

4

merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* "Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum selection clause should not consider arguments about the parties' private interests. When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* at 582. "As a consequence, a district court may consider arguments about public interest factors only." *Id.* However, "[b]ecause those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.*

"When parties have contracted in advance to litigate disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectations." *Id.* at 583. "A forum-selection clause, after all, may have figured centrally in the parties' negotiations and may have affected how they set monetary and other contractual terms; it may, in fact, have been a critical factor in their agreement to do business together in the first place." *Id.* "In all but the most unusual cases, therefore, 'the interest of justice' is served by holding parties to their bargain." *Id.*

Interpretation of a forum-selection clause is governed by state law. *Weber v. PACT XPP Techs.*, AG, 811 F.3d 758, 770-71 (5th Cir. 2016); *Indus. Print Techs.*, 2014 WL 7240050, at *5-6. There is no dispute that the forum-selection clauses at issue here are governed by New York law. New York has a "strong public policy favoring enforcement of forum selection clauses," and New York courts construe such clauses broadly. *See, e.g.*, *Montoya v. Cousins Chanos Casino LLC*, 943 N.Y.S.2d 793 (Table), at *4-6 (N.Y. Sup. Ct. Jan 12, 2012).

## A. Relevance of a Party's Defense to a Forum Selection Clause

Several courts have found that when a forum selection clause governs only a dispute "arising out of" a contract, and the contract is relevant only as a defense, the forum selection clause is inapplicable. In *Phillips v. Audio Active Ltd.*, the forum selection clause stated that "any legal proceedings that may arise out of [the agreement] are to be brought in England." 494 F.3d 378, 386 (2d Cir. 2007). The Second Circuit found that "[b]ecause the recording contract is only relevant as a defense in this suit, we cannot say that [the plaintiff's] copyright claims originate from, and therefore 'arise out of,' the contract." *Id.* at 391; *see also Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679, 682 (2d Cir. 1993) ("[W]here a plaintiff sues for copyright infringement and asserts no rights under a contract with the defendant containing a forum-selection clause, the forum-selection clause has no effect.").

By contrast, courts have found forum selection clauses governing claims that arise out of or that "relate" or "concern" the agreement applicable to actions where the agreement is raised only as a defense. In *Schering Corporation v. First Databank, Inc.*, the District of New Jersey considered a forum-selection clause providing that "[i]n the event of any dispute concerning this Agreement or the Licensed Products, suit may be brought only in a court of competent jurisdiction in the U.S. District Court of the Northern District of California or the California Superior Court for the Court for the County of San Mateo." 479 F. Supp. 2d 468, 471 (D.N.J. 2007). Because the forum-selection clause utilized the word "concerning," the court found the action to be covered to the agreement because certain defenses were based on the agreement. *Id.*; *see also John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 (3d Cir. 1997) ("The answer to the question whether a 'defense' based on a contract that contains a forum selection clause implicates that clause depends on the language of the clause.").

Courts must be mindful, however, of extending a broadly-worded forum-selection clause too far, such that every subsequent dispute between contracting parties triggers a forum-selection clause when the agreement is raised as a defense. In *General Protecht Group, Inc. v. Leviton Manufacturing Company, Inc.*, the forum-selection clause stated that "any dispute between the Parties relating to or arising out of this [Settlement Agreement] shall be prosecuted exclusively in the United States District Court for the District of New Mexico." 651 F.3d 1355, 1359 (Fed. Cir. 2011). The party invoking the forum-selection clause contended that the clause governed any case involving a "bare allegation" that the agreement provides a defense. *Id.* The opposing party argued that any defense based on the license must be established conclusively as a winning defense. *Id.*

The Federal Circuit struck a balance, concluding that when a party's defense raises "a non-frivolous dispute regarding the scope of a patent license," a broadly-worded forum-selection clause may be triggered. The Court explained that "'[p]atent infringement disputes do arise from license agreements' and that where 'the governing law clause of the license agreement is not limited to license related issues such as the amount of royalty due, term of agreement, and cross licensing [, that clause,] . . . as in any patent license agreement, necessarily covers disputes concerning patent issues.'" *Id.* (quoting *Texas Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1331 (Fed. Cir. 2000)). Accordingly, because the case presented "a non-frivolous dispute" regarding the scope of the license, the Federal Circuit concluded that the forum-selection clause was triggered by the party's defense based on the agreement. *Id.*

### B. Comcast's Forum-Selection Clause

Comcast and Rovi's Software Agreement provides that any "suit, action or proceeding . . . based on any matter ***arising out of or in connection with***" the agreement or "the

7

transactions contemplated hereby shall be brought" in New York. Case No. 2:16-cv-321, Dkt. 78-9 § 12.09 (emphasis added). Comcast contends that Rovi's patent infringement suits are at least connected to the Software Agreement because Rovi accuses technology that may be covered by the Agreement. *See* Dkt. 78 at 10-11. Accordingly, Comcast argues that because the Agreement provides a defense to Rovi's patent infringement suits, the forum-selection clause applies. *Id.*

The Court agrees. Comcast raises a "non-frivolous dispute regarding the scope" of a license, which the Federal Circuit found sufficient to invoke the forum-selection clause in *General Protecht Group*, 651 F.3d at 1359. Comcast disputes whether the perpetual Software Agreement constituted a "sale" for purposes of patent exhaustion and whether the Agreement, though silent as to patent rights, gave rise to an implied patent license. The Court need not resolve these issues to determine that Rovi's suits are "connected" to the Software Agreement.

Rovi's principal argument to the contrary is that because the technology and conduct accused in its patent infringement suits against Comcast are *not* covered by the Software Agreement, the forum-selection clause does not apply. Case No. 2:16-cv-321, Dkt. 119 at 7-11. According to Rovi, the Software Agreement cannot apply to the accused products and conduct because the Software Agreement does not expressly grant patent rights. *Id.* at 8. Such arguments, however, demand resolution of Comcast's liability and defenses, begging the question of whether Rovi's patent infringement suits are at least connected to the Software Agreement.[3] Accordingly, Comcast's non-frivolous defense based on the Software Agreement is sufficient to trigger the forum-selection clause.

---

[3] The Court does not decide whether the forum-selection clause in the Patent Agreement applies.

## C. ARRIS's Forum-Selection Clause

The ARRIS Agreement specifies that "[v]enue for any proceedings *arising out of or related to* this Agreement shall be in a court within the State of New York and the City of New York." Case No. 2:16-cv-00321, Dkt. 88-3 ¶ 9.4 (emphasis added). ARRIS contends that Rovi's patent infringement suits are related to the ARRIS Agreement because the suits involve the same patents licensed to ARRIS under the Agreement. *See id.*, Dkt. 88 at 10. ARRIS also contends that Rovi's actions relate to the Agreement because ARRIS alleges that the actions constitute breach of the enforcement clauses of the Agreement, which preclude Rovi from joining ARRIS in actions against Comcast. *Id.*, Dkt. 77 at 12.

The Court disagrees. As Rovi correctly argues, breach of contract is not a defense to patent infringement. *Id.*, Dkt. 113 at 1. Aside from ARRIS's breach of contract argument, ARRIS does not contend that the ARRIS Agreement itself provides a license for or otherwise covers the products and conduct accused by Rovi in the patent infringement actions. Accordingly, ARRIS has not raised a non-frivolous defense to patent-infringement based on the ARRIS Agreement. *See General Protecht Group*, 651 F.3d at 1359.

The Court nevertheless finds it necessary to transfer the entirety of Rovi's infringement actions to New York because Comcast and Rovi's Software Agreement requires Rovi to litigate the Comcast dispute in New York. Rovi decided to sue numerous defendants in the same action, accusing the non-Comcast defendants of supplying set-top cable boxes to Comcast without authorization. *See, e.g.*, Case No. 2:16-cv-00321, Dkt. 113 at 4. Some of Rovi's infringement claims are based on divided or indirect infringement involving both Comcast and non-Comcast defendants. The liability of the non-Comcast defendants therefore depends on or is at least connected to Comcast's liability. It would be difficult to untangle the knot, but even if the

Court could resolve the non-Comcast defendants' liability independent of Comcast's liability, it would inefficient to do so. *See Chi Mei Optoelectronics Corp. v. LG Philips LCD Co.*, No. CIV.A. 2:07-CV-176, 2008 WL 901405, at *2 (E.D. Tex. Mar. 31, 2008) (granting motion to transfer where interest of justice "weighs in favor of having the parties resolve their related disputes in one forum"). Accordingly, Rovi's entire actions must be transferred.

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Case Nos. 2:16-cv-00321 and 2:16-cv-00322 be transferred to the United States District Court for the Southern District of New York. The clerk shall take all steps necessary to effectuate this transfer.

**SIGNED this 25th day of October, 2016.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE